670 So.2d 434 (1996)
John DOWNS, Jr., et al., Plaintiffs-Appellants,
v.
R.T.S. SECURITY, INC., et al., Defendants-Appellees.
No. 95-835.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
Rehearing Denied April 24, 1996.
*436 Karl W. Bengtson, T. Robert Shelton, Lafayette, for John Downs Jr. and Norma L. Downs.
R.T.S. Security, et al., for R.T.S. Security, et al.
Jennifer M. Kleinpeter, Lafayette, for Olin Corporation.
John A. Keller, Lafayette, for Ortego Oil & Supply Company, Inc.
Before KNOLL, THIBODEAUX and AMY, Judges.
AMY, Judge.
This appeal arises from the trial court's granting of a peremptory exception of no cause of action in favor of the defendant-appellee, Olin Corporation. For the following reasons, we affirm the judgment of the trial court.

FACTS
John Downs, Jr. was employed by Country Mart, Inc., the lessee and operator of a convenience store known as the Country Mart, Jr. in Carencro, Louisiana. On December 26, 1993, while Downs was working at the Country Mart, Jr., an unknown armed robber entered the store and shot Downs three times. The first bullet entered the front of his right shoulder and exited through the back of his arm. The second and third bullets entered at his right flank and exited near his navel, leaving a grapefruit size wound.
On December 27, 1994, Downs and his wife, Norma, filed suit against Ortego Oil & Supply Company, Inc., the owner and lessor of the store, R.T.S. Security, Inc., who provided the store with security services, A. Graham and Joan Turland, the legal successors of R.T.S. Security, Inc., and Olin Corporation, the manufacturer of the "Black Talon" bullets that Downs was shot with. Specifically, Downs alleged that his injuries were worsened and aggravated by the defective design of the "Black Talon" ammunition. Downs also alleged that the ammunition, upon impact with the human body, opened up to extend "several pointed and jagged metalic `petals' which spin and slice through the soft tissues of the body in a path of destruction much wider, destructive and potentially deadly than normal handgun ammunition of standard design."
On February 15, 1995, Olin Corporation filed a peremptory exception of no cause of action. After hearing arguments, the trial court, in granting the exception of no cause of action, reasoned that under Addison v. Williams, 546 So.2d 220 (La.App. 2 Cir.), writ denied, 550 So.2d 634 (La.1989), manufacturers of weapons and ammunition used in it are not liable for the injuries resulting from criminal misuse. On March 20, 1995, the trial court rendered judgment encompassing its oral reasons for judgment. However, on March 23, 1995, the trial court rendered an amended judgment which added: "dismissing plaintiffs' case against OLIN CORPORATION with prejudice at plaintiffs' cost."
The Downs appeal from that judgment and assert that the trial court erred in: (1) failing to recognize a cause of action under the Louisiana Products Liability Act (LPLA); (2) failing to leave for jury determination the questions of whether Olin's design was unreasonably dangerous as alleged in the petition; (3) failing to grant the Downs a period of time to amend their petition to specifically *437 set forth additional facts that would have been necessary to state a cause of action; and (4) entering an amended judgment without notice.

PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION
The peremptory exception of no cause of action tests the sufficiency in law of the plaintiff's petition to allow recovery by anyone against the defendant and is triable solely on the face of the petition and any annexed documents or exhibits, with all well-pleaded allegations of fact accepted as true. Young v. Central Louisiana Legal Services, 432 So.2d 1072 (La.App. 3 Cir.1983). The general rule is that where a petition states a cause of action as to any grounds or portion of a demand, the exception of no cause of action should be denied. Ward v. Tenneco Oil Company, 564 So.2d 814 (La.App. 3 Cir. 1990). In reviewing a trial court's ruling sustaining an exception of no cause of action, the court of appeal should subject the case to a de novo review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition. City of New Orleans v. Board of Commissioners of the Orleans Levee District, 93-0690 (La. 7/5/94), 640 So.2d 237.
A claimant may recover under the LPLA by proving that the damage arose from a reasonably anticipated use of the product and that the product was unreasonably dangerous in at least one of the following ways, namely: (1) in construction or composition; (2) in design; (3) for inadequate warning; or (4) for the product's failure to conform to an express warranty of the manufacturer. La.R.S. 9:2800.54; State Farm Mutual Insurance Co. v. Wrap-On Company, Inc., 626 So.2d 874 (La.App. 3 Cir.1993), writ denied, 93-2988 (La. 1/28/94), 630 So.2d 800. La.R.S. 9:2800.56 provides that a product is unreasonably dangerous in design, if at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.
The Downs argue in brief that the trial court erred in granting Olin's exception of no cause of action because they have stated a cause of action under the LPLA. Specifically, the Downs argue that they asserted in their petition that the "Black Talon" ammunition was defective in design under the LPLA. Their petition states, in pertinent part, that:
The severity of the injuries suffered by JOHN DOWNS in this shooting were worsened and aggravated by the defective condition of the "black talon" ammunition, and by WINCHESTER'S negligence and other legal fault, through its officers and agents, and through its employees pursuant to the legal doctrine of respondeat superior, in the following non-exclusive particulars:
A. Designing and marketing to the general public, a form of ammunition which is specifically designed to increase the likelihood of death or severe disabling and disfiguring injury to a human being;
B. Designing and marketing to the general public, handgun ammunition which is designed to enhance injury to the human body in a manner which violates the standards of human decency set by the United States' international treaties for soldiers to conduct all out war between nations;
C. Designing and marketing to the general public, handgun ammunition for which there are, and have for many years been, many safer alternative designs;
D. Designing and marketing to the general public, a product which is inherently dangerous and incapable of safe use, its injury enhancement/death-encouraging features making this product ultrahazardous;
E. Designing and marketing to the general public, a product which is hazardous *438 in the extreme, without any regard for the life, health or safety of the persons against whom the product may be used, and with total, reckless abandonment of the duty to act in all matters with reasonable care; and
F. Other acts of negligence, legal fault and defects in design, manufacture and marketing to be proven at trial.
Olin, on the other hand, asserts that the trial court properly granted the exception of no cause of action based on the reasoning in Addison, 546 So.2d 220. We agree.
In Addison, a patron at the Hub Lounge in Bossier City, Louisiana was ordered to leave the premises. The patron soon returned to the lounge with a Colt AR-15 model SP1 semi-automatic rifle and opened fired on the lounge, firing 55 rounds of .223 caliber ammunition into the building. Bullets and bullet fragments struck six of the customers at the lounge, fatally injuring one person and injuring five others. Subsequently, the survivors of the person killed and three of the injured parties filed suit against Colt Industries, Inc., the manufacturer of the rifle, and Olin Corporation, the manufacturer of the ammunition. Colt Industries and Olin Corporation filed peremptory exceptions of no cause of action which were granted by the trial court. In affirming the trial court's judgment, the second circuit stated, in pertinent part, that:
In a typical products liability case there exists some defect in the product or some unintended side effects or results. In the instant case the weapon functioned properly as it was designed to operate. There was nothing `wrong' with it in a functional sense. There must be `something wrong' with a product before the risk/utility analysis may be applied in determining whether the product is unreasonably dangerous or defective.
* * * * * *
The primary or basic function of a gun is to fire a bullet capable of killing. A gun that has the capacity to shoot and kill, which is its primary function, cannot be said to be unreasonably dangerous per se because it has that capacity. A product cannot be said to be unreasonably dangerous per se where the danger complained of is the purpose and function of the product.
* * * * * *
Plaintiffs argue that comparing a handgun to an assault rifle is like comparing a firecracker to dynamite. It is argued that handguns are primarily defensive weapons and assault rifles are primarily offensive weapons, and that while there may be some social utility for handguns there is none for assault rifles. Plaintiffs emphasize the greater power, penetrating capabilities, and rapid fire of the assault rifle. It is argued that the manufacture of assault rifles and the manner in which they are marketed create an atmosphere of violence and an increased risk beyond that presented by other guns, thereby rendering this product unreasonably dangerous and defective and presenting an unreasonable risk of harm to the public.
We recognize the difference in physical characteristics and capabilities of assault rifles as compared to handguns. However, all guns are dangerous and have the capacity to kill. Each type of gun has characteristics that make it more dangerous than another type, depending on its use.
* * * * * *
We conclude that the legal principles applied and the results reached in Strickland and Perkins involving criminal misuse of handguns are controlling in the instant case involving a semi-automatic assault rifle. The manufacturers of the weapon and the ammunition used in it are not liable for injuries resulting from intentional criminal misuse of the gun.
546 So.2d at 224, 225.
In the case sub judice, there is no dispute that the "Black Talon" ammunition functioned in a manner consistent with its basic purpose. There was no flaw in the ammunition in the functional sense. The function of a bullet is to inflict injury or death. While Addison was decided before the effective date of the LPLA, there is nothing in the Act or the jurisprudence that indicates the reasoning and logic behind Addison is not applicable to the facts of this case. See also *439 Hines v. Remington Arms Company, Inc., 94-0455 (La. 12/8/94), 648 So.2d 331 [The manufacturer of gunpowder was not liable because the "gunpowder acted as expected" when the claimant accidently fired his rifle into a container full of gunpowder].
The Downs allege that the "Black Talon" ammunition was unreasonably dangerous because it was designed to increase the likelihood of death or severe injury, which sets it apart from other ammunition manufactured by Olin. However, the Downs do not allege that the ammunition is defective. This same type of argument was found without merit in Addison. The fact that a person is injured by a product does not entitle that victim to recover damages. Attempting to characterize one type of ammunition as presenting a greater risk of harm than another type of ammunition becomes extremely tenuous. Every type of ammunition in a gun is a dangerous product, however, that danger relates to its function and it cannot be said to be unreasonably dangerous because it has that function. Unfortunately, it is reality that some products such as knives and guns must, by their very nature, be dangerous to be functional. And while they have the potential to inflict injury and death, this alone does not necessarily give rise to liability.
Thus, for the foregoing reasons, we conclude that the trial court properly granted Olin's peremptory exception of no cause of action. As such, the Downs' second and third assignments of error are now moot.

THE AMENDED JUDGMENT
The Downs assert that the trial court erred in amending the original judgment only three days later to include the phrase "with prejudice" without giving notice or a contradictory hearing. We disagree.
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party to (1) alter the phraseology of the judgment, but not its substance; or (2) correct errors of calculation. La.Civ.Code P. art. 1951. A final judgment may also be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party, where the amendment takes nothing from or adds nothing to the original judgment. LeBlanc v. LeBlanc, 600 So.2d 160 (La.App. 3 Cir.1992).
In the case sub judice, the trial court rendered judgment on March 20, 1995, whereby the trial court granted Olin's peremptory exception of no cause of action. Three days later, the trial court amended its original judgment to include that the Downs' case against Olin was dismissed "with prejudice." However, the effect of sustaining a peremptory exception of no cause of action is that the case shall be dismissed. La.Civ. Code P. art. 934. While Article 934 does not explicitly say "with prejudice," the peremptory exceptions are designed to preclude a right of action. Ubosi v. Sowela Technical Institute, 584 So.2d 340 (La.App. 3 Cir.), writ denied, 589 So.2d 1075 (La.1991). When an action is dismissed with prejudice it cannot be filed again. Id. And, an action that has been dismissed with prejudice can be appealed. La.Civ.Code P. art. 1673. Therefore, under the original judgment, when the trial court granted Olin's peremptory exception of no cause of action, the dismissal precluded that right of action. The trial court did not allow the Downs to amend their petition, thus, the only remedy the Downs had was to appeal that judgment. When the trial court amended its original judgment only three days later to include that the Downs' action against Olin was dismissed "with prejudice," nothing was added nor taken away from the original judgment. If there was error, it was harmless error. Therefore, we find that this assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellants.
AFFIRMED.
KNOLL, Judge, concurring.
I agree with all that is said by the majority opinion. I respectfully concur for the additional reasons.
It was the criminal use of the ammunition by an unknown armed robber, with his criminal *440 intent to kill or inflict bodily harm, that caused Downs' injuries. This is a criminal activity. Downs' cause of action is more properly against the armed robber for civil damages. To hold the manufacturer responsible for the criminal use of its product would be placing the manufacturer in the shoes of the armed robber, which is an irrational fiction.
THIBODEAUX, Judge, dissenting.
The exception of no cause of action should not have been granted.
"Reasonably anticipated use" is defined as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La.R.S. 9:2800.53(7). Olin argues that because the gun and ammunition were used in a robbery, such criminal misuse of the product is not a "reasonably anticipated use." Olin cites several cases from other jurisdictions where manufacturers were shielded from liability in similar situations. Olin, like the majority, also cites the Addison case relied upon by the trial judge. In this case, the focus is not on the criminal misuse of the gun, or on the fact that a criminal used the ammunition. It is on the reasonably anticipated use of the ammunition.
The Downs' petition also alleges that the product of the manufacturer was unreasonably dangerous. The Downs allege that the "Black Talon" ammunition is defective in design. The LPLA provides: "the product is unreasonably dangerous in design as provided in R.S. 9:2800.56." La.R.S. 9:2800.54(B). Louisiana Revised Statute 9:2800.56 describes when a product is unreasonably dangerous in design:
A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product...
The Downs allege that the projectile of the "Black Talon" ammunition "opens up to extend several pointed and jagged metallic `petals'." The Downs further assert that the "Black Talon" causes greater destruction to the human body than other types of ammunition. The majority approves Olin's contention that a defect must exist in the product before addressing the unreasonably dangerous nature of the product. Olin further contends that the Downs failed to show that the "Black Talon" ammunition possesses such defect. The majority states that the Downs even failed to allege that the ammunition is defective. I disagree with this analysis.
Under the LPLA, the product possesses a defect when it is rendered unreasonably dangerous due to one of the listed conditionsin construction or composition, in design, inadequate warning, or failure to conform to an express warranty. The majority's position would exempt a manufacturer from liability for an injury-causing product which does not possess a noticeable physical defect and which lacks an adequate warning. With the exception of the inadequate warning, the product would not be faulty.
The Downs allege in their petition that there are other types of ammunition which do not cause as much damage to the human body as the "Black Talon" and, because of the unique design of the "Black Talon" ammunition, the likelihood of increasing Mr. Downs' injuries were high. The Downs further claim that the burden upon Olin of adopting an alternative type of ammunition was light considering the likelihood and gravity of the harm. Olin manufactured bullets before and since the manufacture of the "Black Talon" brand bullets, which have not and do not "open up to extend several pointed and jagged metallic `petals' which spin and slice through soft tissues of the body."
Judge Knoll's concurring opinion attributes the harm to Downs as a result of the criminal use of the ammunition by the unknown robber. That analysis misses the point. While that activity may have initiated *441 Downs' misfortune, the defective design of the ammunition, plaintiffs allege, increased the severity of Downs' injuries.
In their petition, the Downs describe how the design of the "Black Talon" ammunition affects the body.
The projectile of the `black talon' ammunition, by reason of its design, upon impact with the human body, opens up to extend several pointed and jagged metallic `petals' which spin and slice through soft tissues of the body in a path of destruction much wider, destructive and potentially deadly than normal handgun ammunition or standard design.
That, in my view, is the thrust of their case which, if proven, would allow recovery.
For the foregoing reasons, I respectfully dissent.
KNOLL, J., agrees with the majority opinion and concurs for additional reasons.
THIBODEAUX, J., dissents and assigns written reasons.