694 So.2d 1222 (1997)
John KREHER
v.
SEMREH CLUB, d/b/a Krewe of Hermes, et al.
No. 95-CA-0736.
Court of Appeal of Louisiana, Fourth Circuit.
May 14, 1997.
*1223 Richard E. McCormack, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendants.
*1224 Lloyd N. Frischhertz, Seelig, Cosse', Frischhertz & Poulliard, New Orleans, for plaintiff.
Before BARRY, BYRNES and MURRAY, JJ.
MURRAY, Judge.
The defendants, Semreh Club, d/b/a Krewe of Hermes, and United States Fidelity & Guaranty Company (USF & G), appeal a judgment notwithstanding the verdict, in which the trial court raised the general damage award from $5,000 to $100,000 for plaintiff John Kreher's fall from a horse in a Mardi Gras parade. We affirm.

FACTS AND PROCEDURAL HISTORY:
On February 8, 1991, plaintiff John Kreher was riding as a lieutenant in the Hermes parade when the saddle loosened and rotated to the underside of the horse. Mr. Kreher fell to the ground, injuring his back. The horse was provided by High Hills Stables, which had a contract with the Semreh Club.
In February 1992, Mr. Kreher filed suit and a jury trial was held in May 1994. The jury verdict was rendered against the defendants, with the jury finding Mr. Kreher free from fault. On May 4, 1994, the jury awarded damages of $32,500, including $2,500 for past medical expenses, $25,000 for future medical expenses, and $5,000 in general damages. The trial court adopted the jury's verdict in a judgment dated May 10, 1994.
On May 13, 1994, Mr. Kreher filed a Motion for Additur, or Alternatively Motion for New Trial, and Motion for Judgment Notwithstanding the Verdict, or Alternatively Motion for New Trial. On June 29, 1994, the trial court issued a judgment granting the Motion for Additur, and raising the general damage award to $100,000. In its reasons for judgment, the trial court stated that the general damage award of $5,000 was inconsistent with the future medical award.
In letters to the trial court dated July 6 and July 28, 1994, the defendants opposed the additur award and requested a new trial on the issue of damages. The trial court, on its own motion,[1] vacated the June 29 judgment granting additur and denied the motions for new trial or JNOV. The trial court then granted the Motion for JNOV, again raised the general damage award to $100,000, and denied all other matters.
The defendants appeal that judgment. Mr. Kreher filed a protective cross-appeal to the jury's original general damage award.

DISCUSSION:
Defendants assign four errors by the trial court. First, they claim that the trial court abused its discretion when it granted additur because the original jury award of $5,000 was adequate. Second, the judgment granting additur was improper because the defendants were not given an opportunity to either reject the additur or request a new trial. Third, granting of a JNOV was error because additur is the proper procedure to correct a damage award. Last, JNOV was improper because the jury verdict was proper and supported by the record.
Additur is a remedy by which a trial court may correct an inadequate jury verdict. Louisiana Code of Civil Procedure art. 1814 provides:
If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.
(emphasis added)
In the instant case, Mr. Kreher timely moved for additur after the jury verdict was made the judgment of the court on May 10, 1994. The trial court thereafter entered *1225 a judgment on June 29, 1994, granting the additur and increasing the general damage award to $100,000. As correctly noted by the defendants, they never consented to the additur as required by Article 1814; thus, the judgment of May 10, 1994, was never reformed. The general damage award remained at $5,000.
Defendants further argue that because they never consented to the additur, they were then entitled to a new trial. However, defendants are ignoring the fact that a trial judge is granted wide discretion in allowing or denying a motion for new trial. La.Code Civ.Proc. art. 1973. It is apparent to this Court that when defendants declined to accept the additur, the trial court, in its discretion, chose not to grant a new trial. Rather, on its own motion, the trial court vacated the June 29, 1994 judgment granting additur, and instead granted plaintiff's previously denied Motion for JNOV. The trial court then entered judgment in favor of plaintiff awarding general damages of $100,000, and denied the other outstanding motions. The June 29 judgment was not a final, appealable judgment because the defendants did not consent to the additur.
Accordingly, the issue of whether additur was properly granted by the trial court is not before us, and we decline further discussion of defendants' first two assignments of error.
We now address defendants' third and fourth assignments of error alleging error by the trial court in granting the Motion for JNOV. They assert that additur is the proper procedure to correct a damage award, and cite Cooley v. Allstate Ins. Co., 443 So.2d 739 (La.App. 4th Cir.), writ denied, 446 So.2d 1229 (La.1984), in support. In Cooley, this Court, relying on Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3d Cir.), writ denied, 437 So.2d 1149 (La.1983), held that JNOV was an improper procedural device by which to raise a damage award. The Court reasoned that allowing additur and JNOV to be used interchangeably could have the effect of circumventing a party's right to a jury trial. However, defendants ignore the fact that La.Code Civ.Proc. art. 1811 was amended in 1984 to legislatively overrule the Rougeau decision. The amendment added Paragraph F which states: "The motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues." Thus, contrary to defendants' assertions, a JNOV is a correct procedural device to raise a damage award that is not supported by the evidence.
Defendants argue that JNOV, even if an appropriate procedural device, was improper in this case because the jury verdict was supported by the record. Louisiana Code of Civil Procedure art. 1811 governs motions for JNOV. The proper standards to apply when analyzing such a motion, either at the trial or appellate level, however, have developed jurisprudentially. Our Supreme Court has stated:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.
Anderson v. New Orleans Pub. Serv., Inc., 583 So.2d 829, 832 (La.1991), citing Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La. 1986). Considering the harshness of the remedy, the trial court should consider the evidence in a light most favorable to the prevailing party, giving this party the benefit of every legitimate and reasonable inference of fact. Anderson, supra.
When a trial court determines that a JNOV is warranted because an award was inadequate, it must determine the proper amount of damages. In doing this, the trial court is not bound by the constraints imposed on appellate courts of raising the award to the lowest point reasonably within the discretion afforded that court. Rather, a *1226 de novo review of the record should be made, and an award determined after an independent assessment of damages. Anderson, 583 So.2d at 833-34; Daigle v. U.S. Fidelity & Guar. Ins. Co., 94-0304, p.6, (La.App. 1st Cir. 05/05/95), 655 So.2d 431, 436.
On review, the appellate court must first determine whether the trial court erred in granting the JNOV. The appellate court uses the same criteria employed by the trial court, that is, do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer is yes, then it was proper to grant the motion. If the answer is no, the JNOV was improper and the jury verdict should be reinstated. Anderson, supra.
In considering the propriety of the JNOV, we have reviewed the evidence in the manner required by Anderson.
In its reasons for judgment attached to the June 29 judgment, the trial court stated that "[t]he jury awarded $25,000 in future medicals to allow the plaintiff to have a proposed fusion surgery, yet only awarded $5,000 in general damages. The Court has added $95,000 to the general damages to make them consistent with the future medicals." Although, this judgment was later vacated by the July 28 judgment, we can infer that the trial court's reasons for granting the JNOV were the same.
Defendants argue that it was just as reasonable for the jury to have awarded the $25,000 for future medicals to cover future non-operative treatment Mr. Kreher may undergo over his lifetime. They argue that because reasonable and fair-minded men could have reached this suggested conclusion, the JNOV should have been denied.
Dr. Richard Corales, a board certified neurosurgeon, first saw Mr. Kreher on April 2, 1991, approximately seven weeks after the accident. His records indicated that Mr. Kreher had been referred by Dr. Hays, Mr. Kreher's family physician. Mr. Kreher related a history of having fallen from a horse when his saddle slipped, jolting his neck and upper back. He stated that he had pain inside his scapula, tingling "pins and needles" in his left arm, and numbness radiating down into the middle finger of his left hand.
Upon examination, Dr. Corales found that Mr. Kreher had a decreased range of motion in his cervical spine, slight weakness in his left triceps, and numbness in his left middle finger. His diagnosis was mild C7 radiculopathy. He suggested that Mr. Kreher have an MRI performed.
The MRI results indicated a protruding disc at C6-7 and osteophytes at C4-5 and C5-6. Dr. Corales explained that osteophytes are basically bone spurs that indicate degenerative changes. After reviewing the MRI results, Dr. Corales diagnosed Mr. Kreher with C7 nerve root problems, and a small disc rupture at C7. He recommended conservative treatment consisting of a six-day course of tapering steroids and muscle relaxers. He gave Mr. Kreher advice on good body mechanics such as restricting twisting, bending, stooping and lifting.
Dr. Corales saw Mr. Kreher again after one week and noted that there was much improvement. His examination was normal, and the doctor diagnosed Mr. Kreher as having a resolving pinched nerve. He advised him to continue with decreased activity, gradually increasing it over time, and to take Advil for pain.
On cross-examination, Dr. Corales stated that he believed Mr. Kreher had a disc problem that was not caused by the degenerative changes in his cervical spine. He intended to follow Mr. Kreher with conservative treatment on an "as needed" basis, and was not surprised to learn that Mr. Kreher had no treatment for ten months before again seeking medical help. Dr. Corales testified that a person could possibly require surgery for a progressive disc problem at that level.
Dr. Harry Hoerner, a board certified orthopedic surgeon, first saw Mr. Kreher on February 6, 1992, one year after the subject accident. His records indicated that Mr. Kreher presented with neck and left trapezius tenderness, decreased motion to the left, and tightness in the muscles in the back of his neck and left trapezius. His arms were normal with no weakness or loss of sensation. X-rays revealed no fractures or dislocations, *1227 but did indicate slight spurs at the top of C6. Mr. Kreher related, by way of history, that Dr. Corales had found a ruptured disc after an MRI. Dr. Hoerner initially diagnosed a cervical strain, but wanted to see the results of the first MRI. He also requested that Mr. Kreher have a second MRI and an EMG. He prescribed exercises for the neck, Orudis for inflammation and Soma for muscle relaxation.
Mr. Kreher saw Dr. Hoerner again on March 9, 1992, and had the same complaints. Dr. Hoerner's notes also indicated, however, that Mr. Kreher had decreased strength in his left hand. Dr. Hoerner reviewed the results of the first MRI and confirmed that there was a central disc herniation at C6-7, and osteophyte formation at the two levels above. He explained that a C6-7 disc would affect the C7 nerve root.
Dr. Hoerner believed that Mr. Kreher would more likely than not, require surgery in the future considering his symptoms and the herniated disc in his neck. He referred Mr. Kreher to Dr. Vogel, a neurosurgeon for consultation. Dr. Vogel recommended that Mr. Kreher have a myelogram and a CT scan, which was never performed. Dr. Hoerner explained that those tests would really only be necessary if Mr. Kreher decided to undergo surgery. He considered it reasonable for Mr. Kreher not to elect surgery at that time. Dr. Hoerner's estimation of costs for cervical surgery were: $4,000 surgeon fees, $15,000 to $20,000 hospital costs, and $1,000 anesthesia. He also opined that, following surgery, Mr. Kreher would require six to eight weeks of physical therapy, three times per week, at a cost of $30 to $40 per session. The pre-surgery myelogram and CT scan would cost in excess of $1,000. Until such time as Mr. Kreher would elect to have surgery, his only costs would be for medications and doctor visits precipitated by a flare-up in his condition. Dr. Hoerner stated that he charged $60 for each office visit.
Dr. Hoerner acknowledged on cross examination that the degenerative changes in Mr. Kreher's neck could be partly responsible for his symptoms. On redirect examination he explained that the type of herniation shown on Mr. Kreher's MRI was considered a "focal herniation," meaning that it was more likely induced by trauma than any degenerative process.
Viewing the testimony in the light most favorable to defendants, and resolving all inferences in their favor without judging credibility, as required on review of a JNOV, it is obvious that no reasonable juror could have concluded that Mr. Kreher would need future medical treatment worth $25,000, whether back surgery or, as defendants contend, conservative treatment over his lifetime, and award only $5,000 in general damages. Mr. Kreher was thirty-eight years old at the time of trial. If he were to suffer with his neck for the next thirty years, requiring the conservative treatment suggested by defendants, he would certainly be entitled to general damages for pain and suffering in excess of $5,000. We thus find that JNOV was properly granted by the trial court.
Having determined that the motion for JNOV was properly granted, we must now determine if the trial court abused its vast discretion in its award of $100,000 for general damages. As the Supreme Court explained in Reck v. Stevens, 373 So.2d 498, 501 (La.1979), "the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. art. 1934(3) [now La. Civ.Code art. 1999] in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive,... or insufficient." (citations omitted) This court should resort to prior awards only if it is determined that the trial court has abused its discretion.
As outlined above, the MRI results indicated that Mr. Kreher had a ruptured disc at the C6-7 level. Dr. Corales testified that the ruptured disc was causing pain to radiate down Mr. Kreher's left arm and hand. Although he believed Mr. Kreher's symptoms to be resolving following initial conservative treatment, Dr. Corales admitted that it *1228 would not be unusual for the symptoms to reoccur.
Dr. Hoerner, who treated Mr. Kreher from February 1992 until March 1993, described Mr. Kreher's condition as guarded, with a better than fifty percent chance that he would need surgery in the future. Dr. Hoerner testified that the surgery, an anterior cervical fusion, would involve removing the ruptured disc, and introducing a piece of bone from either Mr. Kreher's hip or a bone bank, into the space between the two vertebra. Ideally, these bones would then fuse together. The risks associated with the surgery include death, paralysis and infection. There is no guarantee that the surgery will be successful.
Although Mr. Kreher missed very little work as a result of this accident, and his work does not involve manual labor, Dr. Hoerner opined that he had a ten to fifteen percent permanent disability of the body as a whole. Dr. Hoerner explained that "even looking down reading for long periods of time" is an activity that Mr. Kreher should avoid.
Based on our review of the record, particularly the testimony of Mr. Kreher's two treating physicians, we cannot say that the trial court abused its discretion in making an award of $100,000 in general damages.
Thus, for the reasons stated, the July 28, 1994 judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED.
BYRNES, J., dissents with reasons.
BYRNES, Judge, dissenting.
I respectfully dissent. I would find that the trial court's second judgment granting the plaintiff's motion for JNOV created a substantive change from the trial court's original judgment granting the plaintiff's motion for additur. I would vacate the second judgment and grant the defendants' option to request a new trial on the issue of damages as an alternative to the original additur award.
In its original judgment of June 29, 1994, the trial court granted the plaintiff's motion for additur. With respect to an additur award, the non-moving party will always have the option of a new trial under La. C.C.P. art. 1814, whereas with a JNOV, the party may move for a new trial, but it is within the discretion of the trial court to grant or deny it under La.C.C.P. art. 1811.
A final judgment may be amended by the trial court at any time, with or without notice, and on its own motion or motion of any party, to alter the phraseology of the judgment but not its substance, to correct errors of calculation, or where the amendment takes nothing from or adds nothing to the original judgment. La.C.C.P. art. 1951; Downs v. R.T.S. Sec., Inc., 95-835 (La.App. 3 Cir. 1/31/96), 670 So.2d 434, writ denied, 96-1325 (La.9/13/96), 679 So.2d 104; McCrea v. Mobil Oil Corp., 95-0537 (La.App. 4 Cir. 9/28/95), 662 So.2d 143. The article permitting the trial court to amend a judgment does not permit a substantive change even if the amendment merely expresses the trial court's actual intentions. Magill v. State, Dept. of Public Safety and Corrections, 27,802 (La.App. 2 Cir. 1/24/96), 666 So.2d 1260. A nullity action is not limited to actual fraud or intentional wrongdoing but encompasses those situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive a party cast in judgment of some legal right. La.C.C.P. art. 2004; CHN, Inc. v. Mitel Inc., 95-550 (La.App. 5 Cir. 12/13/95), 666 So.2d 1155. A second judgment containing substantive changes to the original judgment is an absolute nullity; the remedy is to vacate the amended judgment and reinstate the original judgment. Magill, supra.
In State of Louisiana v. Star Enterprise, 95-2124 (La.App. 4 Cir. 9/23/96), 691 So.2d 1221 this court found that the second judgment awarded the state additional relief by including attorney's fees and interest not awarded in the original judgment, and as a matter of law this is not a change of phraseology nor the correction of a calculation so that the second judgment was rendered null and void. See also Stevenson v. State Farm, *1229 624 So.2d 28 (La.App. 2 Cir.1993); ITT Residential Capital Corp. v. Cheuk, 94-744 (La. App. 5 Cir. 5/30/95), 656 So.2d 747, writ denied, 95-1634 (La.10/6/95), 661 So.2d 465.
La.C.C.P. 1814 provides:
Art. 1814. Remittitur or additur as alternative to new trial; reformation of verdict
If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith. [Emphasis added.]
La.C.C.P. art. 1814 provides that the additur award is to be entered only with the consent of the opposing party as an alternative to a new trial. However, in the present case the trial court entered the judgment of additur without the consent of the opposing defendants as an alternative to a new trial. In two letters to the trial court the defendants declined the judgment of additur and alternatively opted to request a new trial on the issue of damages.
The appellate court has the authority to determine whether the trial court abused its discretion in granting or not granting a new trial. La.C.C.P. arts. 1971 and 1973; de la Vergne v. de Lamaze, 95-1866 (La.App. 4 Cir. 2/29/96), 670 So.2d 599. Pursuant to La.C.C.P. art. 1814, the defendants are entitled to a new trial as an alternative to the judgment of additur with respect to damages. Because the judgment was amended from an additur award to a JNOV, the defendants were denied the right to have a new trial, which was the defendants' option to additur under the original June 29, 1994 judgment. Therefore, the last judgment of July 28, 1994 contained a substantive change to the June 29, 1994 judgment granting additur. I would find that the last judgment is an absolute nullity and should be vacated. With respect to the original June 29, 1994 judgment, the defendants should be granted a new trial on the issue of damages as an alternative to the judgment of additur which the defendants declined.
NOTES
[1] Mr. Kreher filed a Motion to Amend Judgment on August 1, 1994, after the trial court had already vacated its June 29 judgment, and rendered the July 28 judgment granting the Motion for JNOV.