498 So.2d 292 (1986)
Henry G. GIESLER, Jr.
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY and Jeanerette Sugar Company, Inc.
No. CA 4534.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
Rehearing Denied December 10, 1986.
*293 Frank J. D'Amico, Sophia Pappas Barnett, New Orleans, for plaintiff.
Shirley A. Nassif, Henry E. Yoes, III, Camilo Salas, III, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for defendants.
Before SCHOTT and BYRNES, JJ., and HUFFT, J. Pro Tem.
(Schott, J., dissenting in part)
PRESTON H. HUFFT, Judge Pro Tem.
This is a claim for personal injuries sustained by the plaintiff as a result of an automobile accident on July 9, 1980. Basically, the appeal raises two issues for consideration: (1) the admission of the deposition of Werner Maiwald and (2) whether the award of $195,052.76 was manifestly erroneous.
The Trial Judge handed down the following detailed reasons for the judgment:
The facts related to the accident on July 9, 1980 are simple enough. Plaintiff, Henry F. Giesler, Jr. was operating a 1980 Toyota automobile on Bienville Street, in the City of New Orleans, and while so engaged was caught in heavy French Quarter traffic headed toward the river. While moving at a very slow rate of speed or having brought his vehicle to a stop, one, J. Randolph Roane, Jr., operating a vehicle owned by Jeanerette Sugar Company, Inc. drove into the rear of the plaintiff. There is conflicting evidence regarding the force with which the Roane vehicle struck the plaintiff's vehicle, as well as the mobility of the plaintiff's vehicle when it was struck. This Court concludes that the striking of the plaintiff's vehicle by the Roane vehicle, with whatever force, was the sole proximate cause of the accident, resulting in a serious injury to the plaintiff.
The plaintiff alleged that he suffered injuries to several parts of his body, primarily his neck and back, all as a result of this accident. However, there is no doubt that plaintiff suffered a work-related *294 injury to his back, a little more than a year prior to the injury which forms the subject of this litigation. As a matter of fact the medical record indicates that in September 1979, plaintiff was discharged from a stint in East Jefferson Hospital with a diagnosis: chronic fatigue, anxiety and degenerative disease. Following his hospital stay, the records reveal, he visited Dr. Fred Smith, a chiropractor, on several occasions. A few months later, he was seen by Dr. George Byram, (who had apparently had some contact with him during his stay in East Jefferson Hospital), who admitted, (while testifying on behalf of plaintiff) that the plaintiff's condition had progressively worsened since he had seen him four or five months earlier. He testified that he was satisfied by that time that the patient was probably suffering from a herniated disc, although he continued to treat him conservatively.
Prior to the accident of July 9, 1980, plaintiff alleges that he was able to perform all of his duties as an outside sales-person for Luftansa Airlines. Subsequent to the accident, he describes very painful experiences from all but the most sedentary activities. He is supported, at least in part, by the (deposition) testimony of plaintiff's supervisor, Werner Maiwald, who described in vivid detail the pain plaintiff experienced following the automobile accident, and while not very specific, leaving this Court with the impression that plaintiff was relatively pain free prior to July 9, 1980. Mr. Maiwald was very positive that plaintiff was fully capable of performing his duties prior to the accident but says "..... that's when his agony began, after the accident," (Deposition p. 30, L 14)
The most difficult legal issue posed by the facts of this case is how to apply equally recognized legal postulates. Our Appellate Courts have spoken time and again on these principles:
1A defendant takes his victim as he finds him and is responsible for all of the natural and probable consequences of his tortious conduct.
Sciortino vs. Alfano 435 So.2d 1010 (1983)
Perniciaro vs Brinch 384 So 2d 392 (1980)
B U T!!
2The law in Louisiana is clear that defendant cannot be held liable for injuries which are not attributable to the wrongful act.
Sciortino vs Alfano cited supra (1983)
Williams vs Winn Dixie Louisiana, Inc. 418 So 2d 13 (1982)
The Court has reviewed all of these cases carefully and concludes that it is the law in Louisiana that in situations involving multiple accidents, whether preceding or subsequent to the accident at issue, a tort feasor is liable only for the direct and proximate results of this wrongful act, including aggravation of any pre-existing legal defects or injuries. In such situations, our Courts have required the plaintiff to prove a causal connection between the damages claimed, and the accident by a reasonable preponderance of the evidence.
Comeaux vs Barksdale 342 So 2d 1181 (1977)
Stevens vs Gulf American Fire and Casualty 317 So 2d 199 (1975)
Applying the above principles to the case at bar, this Court has concluded that to totally compensate the plaintiff for the damages he has suffered for the several accidents he has sustained before and subsequent to the accident sued upon would require an award of approximately $250,000.00. This Court further concludes that since the present accident contributed the major portion of his present difficulties, an award of $195, 052.76 is reasonable under the circumstances.
In reaching this conclusion the Court considered:

Loss of Bodily functions $ 50,000.00
Working while experiencing
pain for twenty (20) years
following the accident @
$ 2,000.00 per year 40,000.00

*295
Medical expenses and other
damages to date, proven
at the time of the trial 25,052.76
Estimate of costs of repairs
to back at some time in
the future 20,000.00
Pain, suffering and inconvenience
related to this accident 60,000.00
 ___________
 $195,052.76

Counsel for plaintiff makes a strong case regarding the alleged loss suffered by this client because he is unable to work without pain. However, not a single medical expert gave even a hint, that the pain, if any now experienced by the plaintiff, is so severe that plaintiff cannot continue to be employed. As a matter of fact, while plaintiff complained of intermittent pain, he does not describe it as being nearly the "excruciating pain" dramatically recounted by Werner Maiwald in his deposition.
Similarly, Counsel for the defendant urges that the plaintiff's substantial damages may be reduced at some time in the future, by the suggested surgery. This Court cannot find anything which supports that conclusion. The future surgery in this Court's view would relieve the present symptoms to some degree, but would not make plaintiff well again. Nothing can be done to do that! No amount of surgery will restore plaintiff's back to a pre-1980 condition!
On appeal defendant argues that plaintiff failed to establish the proper foundation for the admission of the Werner Maiwald deposition. LSA-C.C.P. Art. 1450(3) provides that a witness's deposition may be used if the court finds "(b) that the witness ... is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or.... (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena...." When plaintiff's counsel offered Maiwald's deposition into evidence he stated in open court that the deponent was outside the jurisdiction of the State of Louisiana and the plaintiff was unable to subpoena him. The only discussion between both counsel and the court centered on whether the deposition had been taken for perpetuation or discovery purposes. The court found that the deponent was beyond the jurisdiction of the court and could not be forced to attend.
Defendant would now require more convincing proof of the witness's unavailability than the statements of plaintiff's counsel as to the witness's whereabouts. In support of this position defendant refers us to McKinley v. Dalton, 355 So.2d 1033 (La. App. 4th Cir.1978). In the cited case, the plaintiff attempted to use the deposition of a physician based on Art. 1450(3)(d). His attorney took the witness stand and testified that the deponent told him she intended to move to California by the time of the trial. The court held that this testimony should not have been considered because it was hearsay, but the court found sufficient reason for the introduction of the deposition on the basis of an attempt to serve the witness with a subpoena at her last address.
In the present case, counsel for plaintiff stated on the record that Maiwald was outside the State of Louisiana and plaintiff was unable to subpoena him. Plaintiff's counsel was not challenged as to the authenticity or source of the information. Defendant's only objection to the introduction of the deposition was that it erroneously stated that it had been taken "for all purposes" when in fact it was not taken for perpetuation purposes. This, the defense argued should have precluded its admission. The trial court accepted the uncontested, direct statements of plaintiff's counsel that the witness could not be subpoenaed and allowed the introduction of the deposition. The trial court is vested with great latitude and broad discretion in making the determination as to the unavailability of a witness for the purpose of receiving his deposition into evidence. We do not find that the trial court abused its discretion in admitting the Maiwald deposition into evidence under the facts of this case.
Defendant argues that the award is manifestly erroneous in that the Trial *296 Judge inadequately discounted his total quantum award of $250,000.00 in view of plaintiff's preaccident condition and subsequent reinjuries to the back; duplicated or triplicated the award when it made separate awards for "Loss of Bodily Functions," "Pain, Suffering and Inconvenience" and "Working While Experiencing Pain"; incorrectly included damages for "Loss of Bodily Functions" when at the same time an award was made for future medical procedures, which would return the plaintiff to his pre-accident disability level; and awarded future medical expenses in excess of that supported by the record.
In his reasons for judgment, the Trial Judge recognized that in situations involving multiple accidents, whether preceding or subsequent to the accident at issue, a tort feasor is liable only for the direct and proximate results of his wrongful acts, including aggravation of any pre-existing injuries and in such situations the plaintiff is required to prove by a preponderance of the evidence a causal connection between the damages claimed and the accident in question. Applying these principles of law and in the exercise of the great discretion afforded the trier of fact, the Trial Judge reduced an award of approximately $250,000.00 to $195,052.76 so as to compensate the plaintiff only for those damages resulting from the accident of July 8, 1980. Since the approximate award of $250,000.00 and the actual judgment of $195,052.76 included specials of $25,052.76 for medical expenses and other damages proven as of the date of the trial and $20,000.00 for future medical expenses the Trial Judge in effect reduced an approximate award for plaintiff's injuries, exclusive of specials, from $205,000.00 to $150,000.00. The Trial Judge was in a better position than this court to evaluate the lay and expert testimony. Unless the evaluation is clearly wrong this court should not disturb the credibility decisions of the trier of fact. We do not find the trier of fact committed manifest error.
We now turn to the objections to the award of $195,052.76 as it is itemized in the reasons for judgment. Awards for "Loss of Bodily Functions," "Pain, Suffering and Inconvenience" and "Working While Experiencing Pain" are not duplicious in nature. An award for any one of the three would not in itself exclude the others. An individual may recover for the loss of his bodily functions in addition to his recovery for pain, suffering and inconvenience. Likewise, he may also be compensated for the additional pain he will suffer as a result of carrying on his normal working activities especially when viewed in light of the fact that the Trial Judge made this award instead of an award for future loss of earnings or loss of earning capacity.
There is no inconsistency in the trial judges' award for Loss of Bodily Function while at the same time making an award for future medical expenses. The trial judge concluded in his reasons for judgment that even if the operation was successful in alleviating some of the loss of bodily functions (and there was only a 60% to 70% chance that the surgery would improve his functional capacity) it would not result in the plaintiff being returned to his preaccident condition. Regardless of the outcome of the operation the plaintiff would continue to suffer a loss of bodily function attributable to the accident.
Defendant also complains of the excessiveness of the award of $20,000.00 for future medical expenses. Dr. Richardson testified that the cost of the surgery if performed in New Orleans would be $8,500.00 but would be higher if performed in California where the plaintiff was residing at the time of the trial. While we realize that the Trial Judge had to estimate the additional cost of the surgery in California as well as other expenses that may be involved in such a surgical procedure, we believe that the award of $20,000.00 to cover these future expenses is an abuse of discretion. Accordingly we reduce the award for future medical expenses from $20,000.00 to $10,000.00.
As stated in his reasons for judgment, the Trial Judge carefully considered the direct result of the accident of July 9, 1980 *297 on the plaintiff's condition. The judgment of the District Court as amended to $185,052.76 is not manifestly erroneous.
The judgment appealed from is amended from $195,052.76 to $185,052.76 and as amended is affirmed.
SCHOTT, Judge, dissenting in part.
The trial court awarded plaintiff $150,000 for general damages. He concluded that plaintiff's total pain and suffering would have entitled him to a general damage award of $250,000, but he assigned $100,000 of the damages to plaintiff's pre-existing condition and several post accident incidents which caused him some additional problems.
The record establishes that plaintiff had chronic back problems for many years prior to the accident and he suffered a trauma to his back in August, 1979. His back problems worsened early in 1980, and were so bad that he was taking strong medication in heavy doses up to the time of the accident. His treating physicians, an orthopedist and a neurosurgeon, both diagnosed a ruptured disc and the neurosurgeon thought surgery might be required in the future. The orthopedist characterized the problem as degenerative disc disease. On his first visit to the orthopedist after the accident, plaintiff was complaining as much about a bruise he sustained from arm wrestling as he was about his back. The orthopedist found his back condition to be much the same as it was in February. On his first visit to the neurosurgeon (in August, 1980) after the accident, the physician found less restriction than he had observed prior to the accident; and objective symptoms were less, although subjective complaints were greater.
Subsequent clinical tests, myelograms and CAT scans, demonstrated that the earlier diagnoses of ruptured disc and disc disease were correct and in due course plaintiff underwent a laminectomy. This was not entirely effective and further pain clinic therapy was required with additional surgery recommended.
At one point plaintiff complained of further pain because he fell out of his bed. He also complained of further pain on occasions when he fell off a curb and when he slipped and fell in a grocery store, twisting his back on both occasions.
When the trial judge discounted his $250,000 award by $100,000 he effectively assigned 60% of plaintiff's problems to the accident sued on. I respectfully submit that this conclusion was manifestly erroneous. Along with what has already been said plaintiff's neurosurgeon testified that plaintiff was twenty percent disabled before the accident and while he was forty percent disabled at the time of the trial the additional surgery he recommended would return him to the point where he was twenty percent disabled. The only witnesses to be considered are plaintiff's own physicians. They support the conclusion that plaintiff had a ruptured disc and degenerative disc disease before the accident and that most of his present problems would have surfaced irrespective of the accident. Thus, $150,000 for general damages was excessive and should be reduced.