# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-345

**TOMMY DUBOIS, ET UX**

**VERSUS**

**GORDON ARMSTRONG, ET AL.**

### Consolidated With 15-346

**TAMMY DUBOIS, ET UX**

**VERSUS**

**GORDON ARMSTRONG, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NOS. 74,089 & 74,090, DIVISION C
HONORABLE JAMES RICHARD MITCHELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

### ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Robert A. Mahtook, Jr.
Mahtook & LaFleur, L.L.C.
P. O. Box 3605
Lafayette, LA 70502-3605
Telephone:  (337) 266-2189
COUNSEL FOR:
    Defendants/Appellees - Scottsdale Insurance Company and SMI Group, Inc.

**D. Patrick Daniel, Jr.**
**The Daniel Law Firm**
**P. O. Box 37369**
**Houston, TX 77237**
**Telephone:  (337) 232-7516**
**COUNSEL FOR:**
      **Plaintiffs/Appellants - Tommy Dubois and Tammy Dubois**

**THIBODEAUX, Chief Judge.**

The plaintiff, Tammy Dubois, appeals the trial court's judgment reducing one of her jury awards pursuant to the granting of a motion for judgment notwithstanding the verdict (JNOV) filed by the defendant, SMI Group, Inc. (SMI). She also appeals the judgment on the basis that the trial court's jury interrogatories and verdict form were defective, causing another improper reduction in her damage award. Finding no manifest error in the trial court's granting of the defendant's JNOV, and finding no abuse of discretion in its formulation of the jury interrogatories and verdict form, we affirm the judgment of the trial court.

## I.

## ISSUES

We must decide:

(1)     whether the trial court manifestly erred in granting SMI's JNOV and reducing the jury's award of special damages;

(2)     whether the trial court abused its discretion in requiring the jury to allocate a percentage of causation to the subject accident and a percentage of causation to a prior accident occurring seven days before the subject accident;

(3)     whether the trial court improperly influenced the jury's deliberations warranting the admission of juror affidavits on the issue;

(4)     whether the trial court erred in ordering that judicial interest attach in 2006 when SMI was made a defendant in the tort suit, rather than in 2004 when the plaintiff filed her workers' compensation claim against Cubic; and

(5)     whether the trial court abused its discretion in taxing costs equally to the plaintiff and the defendant.

## II.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Tammy Dubois, was employed by Cubic Applications, Inc. (Cubic) as a local civilian role-player for the training of military personnel at Fort Polk. Cubic also hired the defendant subcontractor, SMI, to provide Arabic-speaking role-players to assist in the military training exercises.

On March 25, 2004, during an exercise, Ms. Dubois sustained injuries when SMI's role-players tried to detain her, and she resisted. She sustained injuries to her left elbow when she hit a wall, and injuries to her left shoulder when an SMI role-player allegedly grabbed her and raised her left arm up over her head. She also alleges to have been shoved into a chair, and she alleges cervical injuries. Ms. Dubois filed a tort suit for this March 25, 2004 incident, which is the subject of this appeal.[1]

Seven days earlier, on March 18, 2004, also while working for Cubic, but not during an exercise involving SMI, Ms. Dubois was injured while unloading a bookcase or locker from the back of a truck parked on an incline. The bookcase weighing 175–200 pounds fell and struck Ms. Dubois, injuring her left shoulder and her neck. Ms. Dubois left work after this accident and iced the injury. She saw her physician on March 23, 2004, two days before the second accident above.

---

[1]Ms. Dubois's tort suit in the trial court bears docket number 74,090. Prior to Ms. Dubois's filing of her suit, her husband, Tommy Dubois, filed a suit for loss of consortium arising from the March 25, 2004 accident, which bears trial court docket number 74,089. In 2008, the trial court granted Tommy Dubois's motion to consolidate his suit with the suit of his injured wife, Tammy Dubois, and the motion was granted. Shortly before trial in May 2014, the plaintiffs filed a motion to dismiss the claims of Tommy Dubois, which was granted. However, the motion for this appeal was subsequently filed in both of the consolidated cases, and two records were lodged. Thus, we have consolidated appeals in this case, numbered 15-345 and 15-346.

Ms. Dubois filed a workers' compensation claim against her employer Cubic in September 2004 for *both* the March 18 and the March 25 accidents.

The jury was presented with extensive medical records, many of which contained brief histories of both accidents, and some of which referenced only the accident with the bookcase. Some of the medical histories stated that Ms. Dubois pulled a muscle in her neck in the bookcase incident; some stated that her chief complaint in the role-playing incident was left shoulder pain. Thus, the medical records showed neck and shoulder injuries in both accidents. Medical testimony also stated that Ms. Dubois had a degenerative condition that was aggravated on March 18, 2004. She underwent extensive procedures for cervical injuries. The medical testimony could not resolve the issue of causation for her injuries between the two accidents.

The jury also heard much testimony regarding the procedures of role-playing—the written scenarios, rule books, and reporting; the organization of the "villages" and the interaction of the local and multi-cultural actors with each other and the army; the various controls exercised out in the field or the training area referenced as "the box;" and the responsibilities of the subcontractor SMI for hiring and training the multi-cultural actors, as well as the responsibilities of the general contractor Cubic for prepping the actors. The jury heard testimony that Ms. Dubois was a good role-player but was overzealous and had a history of going "overboard" in her role-playing.[2] She was written up for the incident on March 25 because she resisted when the Arabic-speaking actor, playing the role of a police

---

[2]The field leader testified that he had to calm Ms. Dubois down and had to separate her from a Bosnian female actor on Ms. Dubois's second day of work after Ms. Dubois threatened to "whip her ass."

officer, was ordered to detain her. The rule-book specifically instructed the actors that they were not to resist or try to escape when detained.

After deliberations, the jury returned a verdict in favor of Ms. Dubois and against SMI in the amount of $983,553.71. It found no fault on the part of Cubic for the actions of SMI's actors during the role-playing exercise on March 25, 2004. The jury did find Ms. Dubois 50% at fault for her own injuries during the exercise. The jury also found that 50% of Ms. Dubois's injuries were caused by her unrelated accident with the bookcase seven days earlier on March 18, 2004. After the two reductions, SMI's liability for its own fault was $245,888.43.

Following trial, Ms. Dubois moved for JNOV to increase the award reduced by the 50% attribution to the first accident, and the trial court denied her motion. On appeal, she contends that the trial court erred in asking the jury to assess percentages of causation to both accidents on the jury verdict form and asks this court to strike the resulting reduction in her award.

Of the $983,553.71 in total damages awarded by the jury, the jury's verdict form indicated that its award for past medical expenses was $303,553.71. SMI alerted the trial court that this amount was identical to the amount reflected in a summary of expenses submitted by the plaintiff's counsel and found inadmissible by the trial court. The trial court immediately retrieved the binders from the jury room and found the inadmissible summary in the front of one of the binders. SMI filed a motion for JNOV to reduce the medical expense award to the amount of actual expenses supported by the medical bills in the record. The trial court granted the JNOV and reformed the jury verdict and judgment to reflect an award of $164,116.36 for past medical expenses. When that figure was inserted on the reformed verdict form, and the reductions were reapplied, the final judgment in

4

favor of Ms. Dubois and against SMI was for $211,029.09, with judicial interest from June 23, 2006 until paid. On appeal, Ms. Dubois asserts that the trial court erred in denying her JNOV, in granting SMI's JNOV, and in reforming the judgment.

Ms. Dubois also appeals the trial court's assessment of costs equally to both parties, and the trial court's award of judicial interest beginning in 2006 rather than in 2004.

III.

## STANDARDS OF REVIEW

> Within the guidelines of [La.Code Civ.P. art. 1812], the trial court is vested with broad discretion in determining whether to submit special interrogatories to the jury. *Black v. Prudential Prop. & Cas. Ins. Co.*, 93-878 (La.App. 3 Cir. 3/2/94); 634 So.2d 1340. It also has wide discretion in the framing of the questions to be posed to the jury. *Bell v. Vickers*, 568 So.2d 160 (La.App. 2 Cir.1990). Absent a showing of abuse of that discretion, an appellate court may not set aside such determinations. *Tramontin v. Glass*, 95-774 (La.App. 5 Cir. 1/30/96); 668 So.2d 1252.

*Citgo Petroleum Corp. v. Yeargin, Inc.*, 95-1574, p. 31 (La.App. 3 Cir. 2/19/97), 690 So.2d 154, 172-73, *writs denied*, 97-1223, 97-1245 (La. 9/19/97), 701 So.2d 169, 170. *See also*, *Guillory v. Avondale Shipyards, Inc.*, 448 So.2d 1281 (La.1984).

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the

5

exercise of impartial judgment might reach different conclusions, the motion should be denied. *Scott* [*v. Hosp. Serv. Dist. No. 1*, 496 So.2d 270 (La.1986)]. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.

*Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 832 (La.1991).

"The standard of review for a JNOV on appeal is a two part inquiry."

*Davis v. Wal-Mart Stores, Inc.*, 00-445, p. 5 (La. 11/28/00), 774 So.2d 84, 89.

"After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review." *Id*.

IV.

## LAW AND DISCUSSION

### *JNOV as Procedural Device for Correcting Unsupported Damage Award*

Ms. Dubois contends that the trial court's granting of SMI's JNOV violated La.Code Civ.P. art. 1951 because it altered the substance of the judgment. Article 1951 provides that "a final judgment may be amended at any time to alter

6

the phraseology of the judgment, but not its substance, or to correct errors of calculation."

Ms. Dubois's argument regarding La.Code Civ.P. art. 1951 has no merit. We have held: "By its clear terms, this article is made applicable to the amendment of final judgments and has no application to reformation of jury verdicts." *Conner v. Florida Farm Bureau Cas. Ins. Co.*, 446 So.2d 383, 387 (La.App. 3 Cir. 1984); *see also Wegman v. Central Transmission, Inc.,* 499 So.2d 436 (La.App. 2 Cir. 1986), *writ denied*, 503 So.2d 478 (La.1987).

The applicable article is La.Code Civ.P. art. 1811, entitled, "Motion for judgment notwithstanding the verdict." It states: "The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues." La.Code Civ.P. art. 1811(F). Thus, the JNOV is a correct procedural device to address a damage award that is not supported by the record. *Kreher v. Semreh Club*, 95-736 (La. App. 4 Cir. 5/14/97), 694 So.2d 1222.

Ms. Dubois erroneously argues that JNOV was not the proper vehicle and that the only procedural devices for correcting a jury's damage award are additur and remittitur. In support, she cites *Cooley v. Allstate Ins. Co.*, 443 So.2d 739 (La.App. 4 Cir. 1983), *writ denied*, 446 So.2d 1229 (La.1984), and *Rougeau v. Commercial Union Ins. Co.*, 432 So.2d 1162 (La.App. 3 Cir.), *writ denied*, 437 So.2d 1149 (La.1983). In doing so, Ms. Dubois makes the same mistake as the defendants in *Kreher*, where the trial court increased a general damage award due to inconsistencies with that jury's other awards. In affirming the trial court, the *Kreher* court stated as follows:

> We now address defendants' third and fourth assignments of error alleging error by the trial court in granting the Motion for JNOV. They assert that additur

7

is the proper procedure to correct a damage award, and cite *Cooley v. Allstate Ins. Co.*, 443 So.2d 739 (La.App. 4th Cir.), *writ denied*, 446 So.2d 1229 (La.1984), in support. In *Cooley*, this Court, relying on *Rougeau v. Commercial Union Ins. Co.*, 432 So.2d 1162 (La.App. 3d Cir.), *writ denied*, 437 So.2d 1149 (La.1983), held that JNOV was an improper procedural device by which to raise a damage award. The Court reasoned that allowing additur and JNOV to be used interchangeably could have the effect of circumventing a party's right to a jury trial. However, defendants ignore the fact that La.Code Civ.Proc. art. 1811 was amended in 1984 to legislatively overrule the *Rougeau* decision. The amendment added Paragraph F which states: "The motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues." Thus, contrary to defendants' assertions, a JNOV is a correct procedural device to raise a damage award that is not supported by the evidence.

*Kreher*, 694 So.2d at 1225.

The *Kreher* court went on to analyze the trial court's granting of the JNOV according to *Anderson*, which we quoted in the previous section on the appropriate standard of review. Under *Anderson*, if we find that the facts and inferences point so strongly and overwhelmingly in favor of the moving party (SMI) that reasonable men could not arrive at a contrary verdict, then it was proper for the trial court to grant SMI's motion.

Here, the jury filled in the blank on the jury verdict form with the exact amount of $303,553.71 to award the plaintiff for her past medical expenses. SMI alerted the trial judge that the figure awarded was the exact figure that appeared on the plaintiff's itemized summary, which had been found inadmissible. SMI's motion for JNOV asserted that the relevant medical bills in the record came to only $164,116.36. Counsel for Ms. Dubois argued that the jury's award was based upon the medical records and the fact that he mentioned the larger figure in his opening and closing statements to the jury. The record, however, reveals that

8

he referenced the medical expenses in his opening statement only, and then only to state that she had medical expenses of "over $300,000." No specific number was provided to the jury, and even if it were, an attorney's opening and closing statements do not constitute evidence. Further contrary to Ms. Dubois's assertions, no new evidence was presented concerning the medical bills; the bills were already in the record.

At the hearing on the motion for JNOV, the trial judge described his own examination of the documents submitted to the jury as follows:

> Immediately after the verdict was rendered, I retrieved all of the exhibits from the jury room. The very first exhibit -- very first document that I looked at was this list that I had ruled was inadmissible. It had that exact same figure that the jury came back with, $303,533.71 [sic/$303,553.71]. I then took all of those exhibits and I went through all of the medical records and I tried my best to add them up. I came up with a figure of about 152,000, I think, but I'm going to defer to [defense counsel's] figure of 164,116.36. That is the only evidence that the jury had as to medical expenses. I do not remember, but I'll take [plaintiff counsel's] word for it, that you did argue the 303,000 on your closing arguments, but as I instructed the jury, your argument is not evidence. The evidence was what was in those records. So, I am going to grant that motion and reduce the medical expenses.

As we previously stated, the only figure mentioned to the jury was in the opening statement, and it was "$300,000." Counsel for Ms. Dubois has pointed to no location in the voluminous record (eleven volumes and several boxes of exhibits) where the exact figure of $303,553.71 was presented to the jury, except for the inadmissible and unsupported expense summary prepared by his law office. Our review reveals that the very first line on the summary indicates that the first doctor's expenses (those of Dr. L.D. Vo) began in January 2004, which was two months before either of the injuries being discussed. Accordingly, we find that

9

where the jury awarded past medical expenses in the exact amount of $303,553.71, and where the only evidence of that figure was the inadmissible summary of expenses left in the evidence binder, the inference is so overwhelming that the figure came from the unsupported summary, that reasonable men could not find otherwise. Thus, we find that the trial court properly granted SMI's JNOV, and we find no abuse of discretion in the trial court's reduction of the award for past medical expenses to $164,116.36.

### Assignment of Causation Between Two Accidents

Ms. Dubois contends that the jury was erroneously instructed to consider whether both accidents caused her damages and to assign a percentage of causation to each accident. She asserts that such fault allocation between two *events* violates La.Civ.Code art. 2323,[3] which requires allocation of fault between *persons only*. She further contends that, because a previous interrogatory required the jury to apportion fault between Ms. Dubois, Cubic, and SMI, the second interrogatory improperly required the jury to apportion fault twice to the same party. We disagree. As a threshold matter, Ms. Dubois's emphasis on "persons only" is misrepresentative, as persons are defined as natural and juridical entities under La.Civ.Code art. 24. Further, article 2323's emphasis is on *all* persons, and

---

[3]Louisiana Civil Code Article 2323 on "Comparative fault" provides in pertinent part:

> In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

it requires allocation of fault to all persons and entities contributing to the injury, whether a party or non-party.

Moreover, under La.Code Civ.P. art. 1812,[4] the trial court is authorized to present to the jury questions designed to show its findings on each

_____

[4]Louisiana Code of Civil Procedure Article 1812, provides in part (emphasis added):

A. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. . . .

. . . .

C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:

(1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:

(a) Whether such fault was a legal cause of the damages, and, if so:

(b) The degree of such fault, expressed in percentage.

(2)(a) If appropriate under the facts adduced at trial, *whether another party or nonparty*, other than the person suffering injury, death, or loss, was at fault, and, if so:

(i) Whether such fault was a legal cause of the damages, and, if so:

(ii) The degree of such fault, expressed in percentage.

(b) For purposes of this Paragraph, *nonparty means a person alleged by **any** party to be at fault*, including but not limited to:

(i) A person who has obtained a release from liability from the person suffering injury, death, or loss.

(ii) A person who exists but whose identity is unknown.

(iii) A person who may be immune from suit because of immunity granted by statute.

(3) If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:

issue of fact arising from the pleadings or the evidence, including the degree of fault of all parties *and* non-parties. We find no abuse of discretion in the trial court's framing of the issues on the verdict form. In fact, the form used by the trial court actually avoided confusion, given the issues and the evidence at trial. In considering the evidence, we point out that Cubic was the plaintiff's employer; and, Cubic was also the entity who hired SMI to provide the Arabic-speaking actors alleged to have caused the subject accident. Cubic was not a defendant in the tort suit, but there was an issue at trial that Cubic was responsible for training the actors hired by SMI. The jury found that SMI, not Cubic, was responsible for the actions of the SMI actors, as shown in the jury's response to the first interrogatory below (first emphasis added), which clearly states that it refers only to the accident in the subject tort suit.

> Please state the percentages of negligence, if any, for each of the following people or entities to the extent that you find each party's negligence proximately caused *this accident*. The names of the people and entities appear below in the same order in which you have been asked to consider the negligence. Nothing is suggested by that order.
>
> | | |
> |---|---|
> | SMI Group | 50% |
> | Tammy Dubois | 50% |
> | Cubic | 0% |

---

(a) Whether such negligence was a legal cause of the damages, and, if so:

(b) The degree of such negligence, expressed in percentage.

(4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if appropriate, the total amount of exemplary damages to be awarded.

D. The court shall then enter judgment in conformity with the jury's answers to these special questions and according to applicable law.

*If you assign 100% to Tammy Dubois and/or 0% to SMI Group, then STOP, and have the jury foreperson date and sign this form and return to the courtroom.*

Based upon the foregoing, the jury found that SMI and Ms. Dubois were equally responsible for the March 25 incident with the SMI actor, but Cubic was not responsible at all for the March 25 incident. The request for a percentage of fault as to SMI is authorized by La.Code Civ.P. art. 1812(C)(1), which pertains to a defendant tortfeasor. The request for a percentage of fault as to Cubic is authorized by Article 1812 (C)(2)(a), which pertains to a non-party. Cubic was alleged by SMI to have been responsible for training the SMI actors but was never named as a party in the tort suit. Under Article 1812(C)(2)(b), Cubic was a non-party alleged by SMI, a party defendant, to have been responsible. The request for a percentage of fault as to Ms. Dubois is authorized by Article 1812(C)(3), as Ms. Dubois is the person claiming damages.

The second interrogatory at issue did not list people or entities, but instead asked the jury how much each of the two accidents contributed to the plaintiffs overall injuries:

Please state the percentage by which each of the following accident(s) may have contributed to plaintiff's injuries for which she is claiming:

Accident on March 18, 2004          <u>50%</u>

Accident on March 25, 2004          <u>50%</u>

*If you assign 100% to the accident on March 18, 2004, and/or 0% to the accident on March 25, 2004, then STOP, and have the jury foreperson date and sign this form and return to the courtroom.*

Based upon the foregoing, the jury found that the plaintiff's overall damages were caused by both accidents equally. This finding automatically cut the

plaintiff's claims against SMI in half because SMI had nothing to do with the first accident. Perhaps this interrogatory should have come first, but the result would have been the same. The plaintiff's award of $983,553.71 became $491,776.85 for the tort suit based upon the March 25 incident. When the plaintiff has had more than one accident, it is her burden to prove causation for damages, as it is "well settled that a tort-feasor is liable only for the direct and proximate results of his wrongful acts or of those for whom he is responsible." *McGuire v. Oliver*, 227 So.2d 149, 149 (La.App. 2 Cir. 1969) (citations omitted).

> In situations involving multiple accidents, whether preceding or subsequent to the accident at issue, a tortfeasor is liable only for the direct and proximate results of his wrongful acts, including aggravation of any preexisting legal defects or injuries. Although a tortfeasor takes his victim as he finds him, the tortfeasor cannot be held liable for injuries which are not attributable to the wrongful act. *Giesler v. United States Fidelity and Guar.*, 498 So.2d 292 (La.App. 4th Cir.1986); *Williams v. Winn Dixie Louisiana, Inc.*, 418 So.2d 13 (La.App. 1st Cir.1982). In such situations, plaintiff is required to prove a causal connection between the damages claimed and the accident by a reasonable preponderance of the evidence. *Giesler*, 498 So.2d at 294.

*Dauzat v. Canal Ins. Co.*, 96-1261, p. 10 (La.App. 3 Cir. 4/9/97), 692 So.2d 739, 746 (quoting *Sanders v. Collins*, 551 So.2d 644, 651 (La.App. 1 Cir. 1989), *writ denied*, 556 So.2d 1261 (La.1990)).

Of the $491,775.85 damages available to the plaintiff for the March 25 accident, the jury's finding that Ms. Dubois and SMI were each 50% responsible, meant that the $491,776.85 must be reduced by half again. Thus, the award became $245,888.42.

Ms. Dubois asserts that the second interrogatory caused an illegal assessment of fault to the same party twice. We disagree. Her arguments are

14

incomplete and lack thoroughness, but she seems to imply that Cubic's fault was assessed twice because Cubic was Ms. Dubois's immune employer in the first *accident*, to which 50% of causation (or fault) was assessed; and, Cubic was *named* on the verdict form once and was assessed "0" fault. But Cubic had a dual role in the plaintiff's injuries, and the "0" assessment of fault pertained only to its role as the non-party general contractor of SMI, and Cubic's potential liability for training SMI's actors was an issue at trial. Cubic's fault as the immune employer of Ms. Dubois is properly assessed under Article 1812(C)(2)(b)(iii), and Cubic's fault as a non-party general contractor responsible for training SMI actors is properly assessed under Article 1812(C)(2)(a)). Because of the dual role that Cubic had in the plaintiff's injuries, it was not error to have a result that considered its fault in two capacities. In fact, La.Civ.Code art. 2323 *requires* that the fault of *all* persons and entities be assessed, even if they are non-parties in the tort suit because of immunity or prior settlement or simply because they were not made defendants for other reasons.

### *Improper Influence and Juror Affidavits*

Following trial, Ms. Dubois filed a motion for JNOV attaching juror affidavits in attempts to show that the jury was confused by the verdict form and the trial court's responses to two questions that the jury asked during deliberations. The trial court struck the affidavits from the record and denied Ms. Dubois's JNOV. Ms. Dubois contends that the trial court erred in striking the affidavits and appeals the trial court's denial of her motion for JNOV.

Pursuant to La.Code Evid. art. 606(B), a juror cannot testify as to any matter or statement occurring during deliberations "or to the effect of anything

15

upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes." This article also precludes juror statements and affidavits. *Id.* The one exception in civil cases is that the juror may testify as to "whether any outside influence was improperly brought to bear upon any juror." *Id*. Ms. Dubois contends that the trial court itself brought outside influence on the jury by its responses to two questions asked by the jury during deliberations. Therefore, the juror affidavits should be admitted and the verdict changed.

The record reveals that at one point during deliberations, the jury sent a question to the trial court asking for clarification as to why they were being asked to attribute a percentage of negligence to Cubic. With regard to the above-shown interrogatory, the trial court's response was that it was limited as to what it could say, but regarding the negligence of Ms. Dubois, SMI, and Cubic:

> You do not have to assign a percentage to each. You may do so as to one, two, three, or none. That is strictly up to you based on your findings, based on the evidence you heard. And that's, that's about all I think I can tell you at this time.

We do not find any improper influence in the trial court's response to the jury's question. In *Parker v. Centenary Heritage Manor Nursing Home*, 28,401 (La.App. 2 Cir. 6/26/96), 677 So.2d 568, *writ denied*, 96-1960 (La. 11/1/96), 681 So.2d 1271, the jury answered *no* regarding the negligence of a defendant hospital in its treatment of the plaintiff. After trial, the plaintiff obtained juror affidavits to show that the jurors were confused over the meaning of the word *treatment*. The trial court struck the affidavits. The appellate court stated:

> The sanctity and privacy of jury deliberations is strongly safeguarded in Louisiana. Neither party is allowed to unlock the closed door of those deliberations,

16

> except in very limited circumstances. As the trial court correctly found, Louisiana law is well settled that the affidavits and testimony of jurors cannot be used to impeach their verdicts.

*Parker*, 677 So.2d at 574 (citing *Theriot v. Theriot,* 622 So.2d 257 (La.App. 1 Cir. 1993), *writ denied*, 629 So.2d 1138 (La.1993)).

The *Parker* court found that failure to understand an interrogatory was not a matter about which the plaintiffs were able to offer any admissible supporting proof, and there was no outside improper influence which would allow the introduction of juror testimony. Similarly, depositions of three jurors, sought to impeach the verdict of the entire jury, were properly excluded in *Williams v. Super Trucks, Inc.*, 36,993 (La.App. 2 Cir 4/9/03), 842 So.2d 1210, *writ denied*, 03-1303 (La. 9/5/03), 852 So.2d 1042.

Here, the other question from the jury came when the jury asked whether the percentages of negligence they found would be used to divide the awards they made to the plaintiff. They specifically used the example of whether dividing a $100,000.00 award by 50% would result in the plaintiff's receiving $50,000.00. Out of the presence of the jury, the trial court discussed the question with counsel for Ms. Dubois and SMI. Not only did Ms. Dubois's attorney not object to the trial court's answer pursuant to La.Code Civ.P. art. 1793, the transcript reveals that her attorney specifically gave the trial judge permission to just write "yes" as the answer to the jury's question and sign his name.

We find no improper outside influence on the part of the trial court in its responses to the two jury questions, and we find no abuse of discretion in the trial court's having stricken juror affidavits obtained after the verdict was rendered.

And, we find no abuse of discretion in the trial court's denial of Ms. Dubois's JNOV.

*Date Upon Which Judicial Interest Attaches*

Ms. Dubois contends that the trial court erred in ordering that judicial interest was due from June 23, 2006, the date of the second supplemental and amending petition in the tort suit naming SMI Group, Inc. as a defendant. She argues that judicial interest should be calculated from September 2, 2004, when she filed the workers' compensation claim against Cubic. We disagree.

Pursuant to La.R.S. 13:4203, "Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts." An award of legal interest in tort cases is not discretionary with the court since interest attaches automatically until judgment is paid, whether prayed for in the petition or mentioned in the judgment. *Odom v. City of Lake Charles*, 00-1050 (La.App. 3 Cir. 1/31/01), 790 So.2d 51, *writ denied*, 01-1198 (La. 6/22/01), 794 So.2d 787. "[W]hen a judgment awards interest from the date of judicial demand and when multiple judicial demands are pleaded in the same suit, interest on *each claim* accrues from the time the judicial demand was made for *that claim*." *Amoco Prod. Co. v. Texaco, Inc.*, 03-1625, p. 8 (La.App. 3 Cir. 6/16/04), 876 So.2d 944, 950 (emphasis added).

Judicial demand was made on SMI when it was named as a defendant in the tort suit by the supplemental and amending petition on June 23, 2006. It is well-settled "that legal interest runs from the plaintiff's first judicial claim against any party responsible for a single *tortious* act." *Edwards v. Daugherty*, 03-2103, p. 23 (La. 10/1/04), 883 So.2d 932, 947 (emphasis added). SMI Group, Inc. is the

18

only defendant found responsible for the tortious acts of the SMI actors. While judicial interest applies equally to solidarily liable insurer and insured as defendants in a tort suit, such as in *Hellmers v. DOTD*, 503 So.2d 174 (La.App. 4 Cir.), *writs denied*, 505 So.2d 1141, 1149 (La.1987), SMI is not solidarily liable with anyone for the tort claims against SMI's actors. Clearly, a workers' compensation claim that cannot be brought in tort cannot begin the running of judicial interest on a claim against a third-party tortfeasor for tortious acts in a tort suit. Judicial interest did not begin to run in 2004.

To the extent that incorrect entities were named in the plaintiff's original petition in 2005, this did not mark the beginning of judicial interest either. *See Cook v. Deshautreaux and Klein Pediatric Clinic*, 315 So.2d 405 (La.App 4 Cir. 1975) (filing of original suit against ABC corporation and XYZ insurance company did not present a judicial demand against the true owner and insurer; interest on the judgment did not attach until the plaintiffs filed a supplemental and amended petition and substituted the true owner and insurer for ABC and XYZ named in the original petition). Here, all earlier-named defendants were dismissed, and no timely appeals were taken.

In *Washington v. Waring*, 13-78, pp. 16-17 (La.App. 1 Cir. 2/18/14), 142 So.3d 40, 51, *writ denied*, 14-515 (La. 4/25/14), 138 So.3d 646 (citations omitted), the court stated as follows:

> In the present case, the only party ultimately found "responsible" for causing Alex's death is Dr. Waring. Dr. Waring was not named as a defendant in the original medical review panel complaint, and she is not a solidary obligor or joint-tortfeasor with Dr. Hill, the party named in the original complaint. Although Dr. Waring and Dr. Hill were both defendants for a period of time in the medical review panel proceeding, all claims against Dr. Hill were voluntarily dismissed, and no fault in

19

connection with Alex's death has since been asserted or assessed to Dr. Hill. Consequently, the complaint against Dr. Hill was not one against a responsible party and cannot serve as the start date for the accrual of legal interest on the judgment rendered against Dr. Waring. Accordingly, we amend the trial court's award of interest and revise the judgment to grant legal interest on the judgment against Dr. Waring from the date of the filing of the complaint against her on May 15, 2002.

Accordingly, for the reasons expressed, we find no error in the trial court's judgment awarding judicial interest from June 23, 2006, when SMI Group Inc. was named as defendant in the second supplemental and amending petition.

***Taxing of Costs***

Ms. Dubois contends that the trial court abused its discretion in taxing costs equally to her and the defendant SMI, because costs must be assessed to the losing party. This argument has no merit. Each party was found to be 50% liable for Ms. Dubois's injuries and damages. Therefore, both parties lost something. Louisiana Code of Civil Procedure Article 1920 states that the losing party pays costs *if* the judgment does not provide otherwise, but it also states that "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."

In *Buller v. American National Property & Casualty Companies*, 02-820 (La.App. 3 Cir. 2/5/03), 838 So.2d 67, we found no error in the trial court's apportionment of court costs, 75% to the driver and 25% to the cow owner, in accordance with the 75/25 percentages of fault assigned to the respective parties. In *Bellard v. South Central Bell Telephone Co.*, 96-1426, p. 24 (La.App. 3 Cir. 8/27/97), 702 So.2d 695, 708, *writ denied*, 97-2415 (La. 12/12/97), 704 So.2d 1202, we found that the trial court abused its discretion by *not* allocating a portion

20

of the costs to a party found partially at fault, stating that "a more equitable assessment would be to cast each party with a percentage of cost equal to their fault."

Accordingly, here, we find no abuse of discretion in the trial court's assessment of costs to both parties equally, in accordance with the jury's assessment of 50% fault to each.

## V.

## CONCLUSION

Based upon the foregoing, the trial court's judgment is affirmed in all respects. Costs are assessed to the plaintiff, Tammy Dubois.

**AFFIRMED**.